IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LISA WYSS,                               3:16-cv-00023-BR

           Plaintiff,                    OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

           Defendant.


MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

           Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1011

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**LARS J. NELSON**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
(206) 615-2732

      Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Lisa Wyss seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Act.

     This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

     Plaintiff filed her application for DIB on May 14, 2012. Tr. 19, 176.[1]  Her application was denied initially and on

---

    [1] Citations to the official transcript of record filed by the Commissioner on June 3, 2016, are referred to as "Tr."

reconsideration.  An Administrative Law Judge (ALJ) held a hearing on May 29, 2014, at which Plaintiff was represented by an attorney.  Tr. 35.  A vocational expert (VE) also testified at the hearing.  Tr. 35.

The ALJ issued a decision on June 25, 2014, in which he found Plaintiff is not entitled to benefits.  Tr. 19-29.  That decision became the final decision of the Commissioner on November 9, 2015, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on June 25, 1968; was 45 years old on the date of the hearing; and has a high-school education with some post-secondary technical education.  Tr. 40, 160.  Plaintiff has prior relevant work experience as an administrative clerk, call-center operator, receptionist, restaurant hostess, retail salesperson, convenience-store cashier, truck driver, beauty-products salesperson, makeup artist, and esthetician.  Tr. 27-28.

Plaintiff alleges disability since May 8, 2012, due to tendinitis, depression, "mood swings," a head injury suffered in a December 2011 motor-vehicle accident, low-back pain, and low blood sugar.  Tr. 180.  Plaintiff's date last insured was September 30, 2016.  Tr. 176.

3 - OPINION AND ORDER

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 22-27.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R.

§ 404.1520.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser,* 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity.  The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related

physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv). *See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser,* 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the

national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since May 8, 2012, her alleged onset
date.  Tr. 21.

At Step Two the ALJ found Plaintiff has the following severe
impairments:  "cervical/lumbar strain," tendinitis, hyperacusis,
post-traumatic stress disorder, depression, pain disorder with
psychological factors, and borderline personality disorder.
Tr. 21.

At Step Three the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any impairment in the Listing of
Impairments.  Tr. 21-22.

In his assessment of Plaintiff's RFC the ALJ found Plaintiff
has the functional capacity to perform a range of light work, but
the ALJ limited Plaintiff to "no overhead reaching bilaterally";
not more than frequent reaching, handling, or fingering

bilaterally; work environments that do not have more than moderate noise levels; tasks that are simple, routine, and repetitive consistent with unskilled work; low-stress work environments that require few decisions and few changes in the workplace; occasional, superficial contact with the public and coworkers; and occasional contact with supervisors.  Tr. 22-27.

At Step Four the ALJ found Plaintiff is unable to perform her past relevant work as an administrative clerk, call-center operator, receptionist, restaurant hostess, retail salesperson, convenience-store cashier, truck driver, beauty-products salesperson, makeup artist, or esthetician.  Tr. 27-28.

At Step Five, however, the ALJ determined Plaintiff can perform other occupations that exist in significant numbers in the national economy, including mailroom sorter or office helper. Tr. 28-29.

Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 29.


### DISCUSSION

Plaintiff contends the ALJ erred when he (1) did not include Plaintiff's traumatic brain injury, vision changes, degenerative joint disease, or fatigue at Step Two; (2) discredited Plaintiff's testimony; (3) discredited the medical and psychological opinions of Wendy Newton, Psy.D.; Steven P. Barry,

Ph.D.; Tricia Zigrang, Ph.D.; Shahana Koslofsky, Ph.D.; Christine Jones, DC; and Kimberly Karlsgodt, DPT; and (4) discredited the lay testimony of Jennifer Siri Rasch, Tim A. Huuki, and Joyce L. Wyss.

## I.    Step Two

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 416.921(a), (b). Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id*.

The Step Two threshold is low:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .  [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to

those applicants with impairments of a minimal nature which could never prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

The Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two as long as the ALJ considers the omitted impairment in his assessment of the claimant's RFC. *Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005).

Plaintiff asserts the ALJ erred at Step Two because the ALJ did not include Plaintiff's traumatic brain injury symptoms, vision changes, "degenerative joint disease," and fatigue as severe impairments. Plaintiff, however, fails to identify any functional limitations caused by these conditions that are not included in the ALJ's assessment of Plaintiff's RFC. For example, references to Plaintiff's vision loss are sporadic throughout the record and do not specifically identify the degree to which Plaintiff has suffered any permanent loss of visual acuity. *See* Tr. 261 ("[Plaintiff] has suffered some . . . visual changes."). The primary symptoms associated with Plaintiff's traumatic brain injury suffered as a result of her December 2011 automobile accident were her memory and hearing loss, both of which the ALJ considered in his assessment of Plaintiff's RFC. Similarly, Plaintiff's degenerative joint disease was most frequently discussed in conjunction with the arm and back

11 - OPINION AND ORDER

limitations that the ALJ incorporated into his assessment of Plaintiff's RFC.  Finally, Plaintiff's fatigue was only sporadically mentioned throughout the medical record and was not addressed in any way from which the ALJ could reasonably assess functional limitations.  *See* Tr. 321 (Plaintiff "[f]atigued very quickly" during physical therapy).

Accordingly, on this record the Court concludes the ALJ did not commit harmful error at Step Two when he did not list Plaintiff's traumatic brain injury symptoms, vision changes, "degenerative joint disease," and fatigue as severe impairments.

## II.  Plaintiff's Testimony

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). *See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the May 29, 2014, hearing Plaintiff testified she was "wrongfully terminated" from her previous job in 2012 and that she later obtained a settlement as a result. Tr. 40. Plaintiff stated she continued to look for employment until her unemployment benefits ran out, but she has not looked for work since that time. Tr. 41.

Plaintiff testified she is disabled as a result of her "severe tendinitis" that makes it "impossible for [her] to do jobs that involve using [her] hands and . . . arms." Tr. 42. Plaintiff stated she is unable to complete tasks that require repetitive movements and that she gets help cooking and performing housework. Tr. 43.

In addition, Plaintiff reported she has a "very, very horrible memory" and a hearing impairment. Tr. 42. Plaintiff testified she is unable to hear a person talking "a few feet" away from her when she is in an environment with background noise

such as a restaurant.  Tr. 44.  Plaintiff stated one of her
medical treatment providers offered a therapy that would improve
her hearing, but she could not afford the treatment.  Tr. 45-46.
Plaintiff testified she also is unable to remember how to perform
basic work functions since her December 2011 automobile accident.
Tr. 51.

Plaintiff also testified she has mental-health problems that
cause her to be unable to control her anger, and she throws
objects and yells at people.  Tr. 47-48.  Plaintiff reported she
is able to maintain casual friendships and acquaintances, but she
is unable to maintain functional relationships on a daily basis
with people she works or lives with.  Tr. 55.  Plaintiff
testified she has sought counseling, but she has been unable to
locate any free or low-cost services and cannot afford to pay
full cost for consistent counseling or mental-health care.
Tr. 49-50.

Plaintiff testified during a typical day she exercises by
walking and stretching and does "a lot of cooking" in order to
accommodate her food sensitivities.  Tr. 52.  Plaintiff states
her hobbies are reading and communicating with people on the
internet and text messaging.  Tr. 52.

In her June 26, 2012, Adult Function Report, Plaintiff
reported her mental-health problems cause her to "break down and
cry several times a week."  Tr. 211.  Plaintiff stated her

tendinitis causes her to be unable to lift her hands or arms after she completes a task that requires repetitive motions. Tr. 211.  Plaintiff stated she suffers from low-back pain that limits her to 30 minutes of standing before she is forced to sit down.  Tr. 211.  As a result of low blood sugar and food allergies, Plaintiff reported she must eat eight times per day, and if she eats any food with sugar, sugar substitutes, chemicals, or preservatives, "it will literally throw [her] into a rage."  Tr. 212.

Plaintiff reported she is no longer able to lift greater than ten pounds as a result of her conditions, and she requires help grocery shopping.  Tr. 213.  Plaintiff stated it takes her one to two hours to prepare meals and that she does laundry, irons clothes, vacuums, dusts, and cleans dishes.  Tr. 215. Plaintiff, however, noted she performs her chores less frequently as a result of her conditions.  Tr. 215.  Plaintiff indicated her conditions also limit her abilities to lift, squat, bend, stand, reach, sit, climb stairs, see, remember, concentrate, understand, follow instructions, use her hands, and get along with others. Tr. 217.  Plaintiff reported she can walk for approximately an hour before needing to stop and rest for approximately ten minutes.  Tr. 217.  Plaintiff stated she has difficulty getting along with her bosses and has noticed "strange obsessive compulsive behaviors," including compulsive cleaning and

organizing.  Tr. 217-18.

The ALJ discredited Plaintiff's testimony on the grounds that (1) Plaintiff's testimony was inconsistent with her medical treatment history; (2) Plaintiff only sought conservative treatment options for her conditions; (3) Plaintiff's alleged limitations were inconsistent with her activities of daily living; (4) Plaintiff's most recent past employment ended for nondisability reasons; and (5) Plaintiff demonstrated secondary gain motives (*i.e.*, Plaintiff's subjective reporting of symptoms was not designed to assist medical and psychological treatment, but was, in fact, motivated to obtain Social Security benefits).

After a thorough review of the record the Court concludes the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony.

The ALJ noted the medical record did not support Plaintiff's allegations of significant memory impairments.  Although Plaintiff testified she has a "horrible memory," testing performed by Steven P. Barry, Ph.D., indicated Plaintiff had only "[m]ild, clinically insignificant, [memory] impairment."  Tr. 46, 677-78.  Moreover, Dr. Barry noted he did "not find evidence of clinically significant memory concerns" and there was "the appearance of some level of secondary gain . . . from her complaints related to memory and pain."  Tr. 680.  Similarly, the ALJ pointed out that Plaintiff's allegations that her arm pain

16 - OPINION AND ORDER

was caused by tendinitis were inconsistent with the evaluation of James T. Nolan, M.D., who found there was "no evidence of any tendinitis present" and "no evidence of inflammation anywhere." Tr. 330. The Court finds the inconsistencies identified by the ALJ between Plaintiff's testimony and the medical record are compelling reasons to discredit Plaintiff's testimony.

As noted, Plaintiff testified she was wrongfully terminated from her previous employment at Stark's Vacuums and received a settlement as a result of the wrongful termination. Tr. 40. Plaintiff's supervisor at Stark's, however, stated Plaintiff was terminated as a result of a company-wide restructuring rather than because she was unable to work. Tr. 556. On this record the ALJ concluded Plaintiff left her employment for nondisability reasons immediately preceding her alleged onset date of disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(noting an ALJ may discredit a claimant's assertion of onset of disability by reference to the fact that the claimant left her immediately preceding employment for nondisability reasons). *See also Page v. Colvin*, No. 14-35243, 2015 WL 6153597, at *1 (9th Cir. Oct. 20, 2015).

Finally, the ALJ's finding that Plaintiff demonstrated secondary-gain motives is supported by substantial evidence in the record. As noted, Dr. Barry indicated Plaintiff demonstrated "some level of secondary gain" in her subjective reporting.

Tr. 680.  Dr. Barry also noted "[n]either [Plaintiff] nor her
chiropractor expect success at [vocational rehabilitation], if
success is defined as returning to work; instead, the expectation
is that [vocational rehabilitation] will find her unemployable
and this will assist her in her application for Social Security
Disability."  Tr. 679.  In addition, on September 11, 2013,
Plaintiff's vocational rehabilitation case worker noted Plaintiff
"has limited what she can and wants to do," and "[w]hen we do
find a goal [that Plaintiff is] agreeable to[, Plaintiff] finds
some reason why it won't work."  Tr. 653.

On this record, therefore, the Court concludes the ALJ
provided legally sufficient reasons for discrediting Plaintiff's
testimony.

### III. **Medical Testimony**

As noted, Plaintiff contends the ALJ erred when he
discredited the medical and psychological opinions of
Drs. Newton, Koslofsky, Barry, Zigrang, Jones, and Karlsgodt.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes findings setting forth specific,
legitimate reasons for doing so that are supported by substantial
evidence in the record.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1232 (9th Cir. 2011).  When the medical opinion of
a treating physician is uncontroverted, however, the ALJ must

18 – OPINION AND ORDER

give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10-36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir. 1996)).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). *See also Garrison v. Colvin*, No. 12-CV-15103, 2014 WL 3397218, at *13 (9th Cir. 2014). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831). When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). *See also Simpson v. Astrue*,

No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

**A.    Dr. Newton**

Dr. Newton treated Plaintiff briefly between November 2012 and February 2013.  Plaintiff had four appointments with Dr. Newton.  Dr. Newton neither submitted a formal opinion to the Social Security Administration nor conducted any comprehensive evaluation of Plaintiff's mental impairments and functional limitations that could be viewed as the equivalent of medical testimony.  Tr. 576-80.  Instead the "opinion" from Dr. Newton that Plaintiff relies on to support her contention that the ALJ improperly discredited Dr. Newton's testimony are merely the four treatment notes from Plaintiff's appointments with Dr. Newton. The treatment notes from Dr. Newton, however, do not qualify as medical testimony that requires special consideration by the ALJ, but instead merely represent a part of the general record.

The ALJ summarized Dr. Newton's treatment notes, but he ultimately concluded "[t]he difficulty with evaluating the claimant's mental health concerns is that there is effectively no longitudinal history of mental health diagnosis, treatment, or response to treatment to accurately assess the severity of the claimant's condition."  Tr. 25.  The ALJ, therefore, considered Dr. Newton's treatment notes together with the rest of the record relating to Plaintiff's mental impairments; correctly concluded

20 - OPINION AND ORDER

the record regarding Plaintiff's mental impairments was sparse;
and, therefore, reasonably approached evaluation of Plaintiff's
mental-health conditions with caution.

Accordingly, on this record the Court concludes the ALJ did
not err in his consideration of Dr. Newton's treatment notes.

**B.   Drs. Koslofsky and Barry**

Dr. Barry conducted a psychological evaluation of Plaintiff
on April 24, 2013, in relation to Plaintiff's participation in
vocational rehabilitation.  Tr. 668.  Dr. Barry conducted an
extensive clinical interview and several psychological tests.
Dr. Barry "did not find evidence of clinically significant memory
concerns," but he, nonetheless, found Plaintiff "isn't a good
candidate for rehabilitation and employment" based on her
personality disorder.  Tr. 680.  Dr. Barry recommended employment
that limits "contact with co-workers"; "day-to-day, moment-to-
moment contact with supervisors"; and "the amount of time she has
to stay involved with customers."  Tr. 680.

Dr. Koslofsky also conducted a psychological evaluation of
Plaintiff on April 8, 2014, in relation to Plaintiff's
participation in vocational rehabilitation.  Tr. 639-43.  After
conducting an interview and completing a Personality Assessment
Inventory, Dr. Koslofsky found Plaintiff's "profile suggests that
she is likely to be quite emotionally labile, manifesting fairly
rapid mood swings."  Tr. 641.  Dr. Koslofsky diagnosed Plaintiff

with chronic post-traumatic stress disorder and found Plaintiff experiences symptoms of hyper-arousal including irritable or aggressive behavior as well as self-destructive behavior. Tr. 642.

Although the ALJ summarized the opinions of Drs. Barry and Koslofsky, the ALJ merely stated "[t]he difficulty with evaluating the claimant's mental health concerns is that there is effectively no longitudinal history of mental health diagnosis, treatment, or response to treatment to accurately assess the severity of the claimant's condition." Tr. 25. The ALJ, therefore, did not provide specific and legitimate reasons for discrediting the opinions of Drs. Barry and Koslofsky.

On this record, therefore, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons for discrediting the opinions of Drs. Koslofsky and Barry.

### C. Dr. Zigrang

Dr. Zigrang completed a Mental Status Report on June 26, 2016. Plaintiff saw Dr. Zigrang on a weekly basis from March 16, 2012, until May 30, 2012. Tr. 324. Dr. Zigrang diagnosed Plaintiff with "major depression" that caused Plaintiff to experience depressed moods, hopelessness, poor concentration, and difficulty controlling her anger. Tr. 324. Dr. Zigrang did not perform any psychological tests on Plaintiff. Tr. 324. Dr. Zigrang stated Plaintiff's mood swings had improved as a

result of dietary changes and that her depression had improved through the course of psychotherapy.  Tr. 325.  Dr. Zigrang also stated Plaintiff has difficulty concentrating both as a result of her depression and after her injuries from the motor-vehicle accident.  Tr. 326.

The ALJ gave "some weight" to Dr. Zigrang's assessment, but he partially discredited her opinion because she did not perform any psychological testing and her statements were "very general and provided little specific opinion regarding the severity of limits."  Tr. 25, 324.  In light of the fact that the ALJ properly discredited Plaintiff's subjective reporting, the lack of psychological testing undermines Dr. Zigrang's opinion.  In addition, the ALJ reasonably noted Dr. Zigrang's opinion was general and contained few specific functional limitations beyond those which the ALJ incorporated into his assessment of Plaintiff's RFC.

Accordingly, on this record the Court concludes the ALJ provided legally sufficient reasons for discrediting the opinion of Dr. Zigrang.

**D.    Dr. Jones**

Some medical sources, including nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists, are considered "other sources" under 20 C.F.R. § 404.1513(d)(1), and their opinions are not entitled to the same

consideration as the "acceptable medical sources" listed in 20
C.F.R. § 404.1513(a).  In order to reject the opinion of an
"other source" the ALJ must provide "'reasons germane to each
witness for doing so.'"  *Molina*, 674 F.3d at 1111 (quoting *Turner
v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Dr. Jones, Plaintiff's chiropractor, submitted a letter to
the Social Security Administration dated March 15, 2013.
Dr. Jones stated she had treated Plaintiff for over 12 years.
Tr. 343.  She reported Plaintiff "has struggled with pain during
any repetitive motion" since 2000.  Tr. 343.  Dr. Jones also
reported Plaintiff's "tendinitis pain" has "disabled her from
carrying out simp[le acts of daily living such as lifting a
gallon jug, or cleaning her home, or drying her hair."  Tr. 343.
Dr. Jones stated Plaintiff's "memory might impair her ability to
return to work" and that a psychological evaluation revealed
Plaintiff "was suffering from a personality disorder or mental
illness."  Tr. 344.  Dr. Jones opined Plaintiff suffers mood
swings as a result of her mental impairments, and she ruled out
blood sugar as a cause for Plaintiff's mood instability.
Tr. 344.  Dr. Jones concluded "[t]he combination of disabling
tendonitis, a concussion, back pain and a personality disorder
will make it formidable, and in my opinion, impossible for her to
have any successful employment.  Due to pain and memory problems,
she has less reserves than ever before to gait [*sic*] her mood and

emotions."

The ALJ discredited Dr. Jones's opinion because Dr. Jones is not an "acceptable medical source" within the meaning of Social Security regulations, Dr. Jones's opinion regarding tendinitis was inconsistent with objective evidence in the medical record, and Dr. Jones's opinions regarding Plaintiff's mental health were outside of her expertise as a chiropractor.  Tr. 26.

As noted, Dr. Jones, a chiropractor, is not an "acceptable medical source" within the meaning of 20 C.F.R. § 404.1513(a) and is considered an "other source" under § 404.1513(d).  The ALJ, therefore, may discredit Dr. Jones's opinion if "the ALJ 'gives reasons germane to each witness for doing so.'"  *See Molina*, 674 F.3d at 1111 (quoting *Turner*, 613 F.3d at 1224.

The lack of objective evidence in the record supporting Dr. Jones's opinion is a germane reason for the ALJ to discredit Dr. Jones's assessment of Plaintiff's functioning.  For example, although Dr. Jones appears to assume that Plaintiff's arm pain is caused by tendinitis, there is not any objective evidence in the record that supports that diagnosis, and, in fact, Dr. Nolan expressly ruled out tendinitis.  Tr. 330.

Accordingly, on this record the Court concludes the ALJ provided legally sufficient reasons for discrediting Dr. Jones's opinion.

**E.   Dr. Karlsgodt**

Dr. Karlsgodt, a physical therapist, treated Plaintiff from April 18, 2012, through May 2, 2012.  Tr. 320-22.  Dr. Karlsgodt stated in a letter to the Oregon Department of Human Services that:

> Ms. Wyss-Bardsley was showing some progress during her [physical therapy] sessions, but was unable to continue.  Therefore I am unable to advise if she would continue to show improvement with regular [physical therapy] care.  Based on my assessment of her current condition, she is unable to tolerate prolonged sitting and any sort of activity that requires repetitive motions or any upper body lifting and carrying.

Tr. 323.

Because Dr. Karlsgodt is an "other source" within the meaning of 20 C.F.R. § 404.1513(d), the ALJ was required to provide reasons germane to Dr. Karlsgodt's opinion to discount her assessment of Plaintiff's functional limitations.  The ALJ, however, failed to address Dr. Karlsgodt's opinion.  Accordingly, the ALJ failed to provide germane reasons for discounting Dr. Karlsgodt's opinion.

Accordingly, on this record the Court concludes the ALJ erred when he failed to provide legally sufficient reasons for discrediting Dr. Karlsgodt's opinion.  Because Dr. Karlsgodt's opinion regarding Plaintiff's sitting limitations were not included in the ALJ's assessment of Plaintiff's RFC, the ALJ's error is not harmless.

**IV.**  <u>**Lay Testimony**</u>

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Commissioner, Social Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis.  Rather if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012)(quotation omitted).  Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of the claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 Fed. App'x 866 (9th Cir. 2012).

Jennifer Siri Rasch, Plaintiff's former coworker; Tim A. Huuki, Plaintiff's roommate; and Joyce L. Wyss, Plaintiff's sister-in-law, submitted letters to the Social Security Administration on Plaintiff's behalf setting out their

observations of Plaintiff's functionality.  Tr. 249-52.  The ALJ partially discredited the opinions of Rasch, Huuki, and Wyss because "none of these individuals are knowledgeable in the medical and/or vocational fields and thus are unable to render opinions on how the claimant's physical activities and mental impairments impact her overall abilities to perform basic work activities among various occupations."  Tr. 27.

The ALJ, however, may not reject lay testimony on the basis that the lay witnesses lack medical or vocational expertise. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009).  Although there were minor portions of the lay-witness opinions that discussed Plaintiff's diagnoses, the primary focus of the lay-witness testimony consisted of observations of Plaintiff's day-to-day functionality.  The ALJ, therefore, did not provide reasons germane to the lay witnesses for discrediting their testimony.

Accordingly, on this record the Court concludes the ALJ erred when he discredited the lay opinions of Rasch, Huuki, and Wyss.  Because it does not appear the ALJ's assessment of Plaintiff's RFC adequately accounts for the observations of the lay witnesses, the ALJ's error was not harmless.

**V.    <u>Remand</u>**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the

28 - OPINION AND ORDER

court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine whether a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

*Id.* The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010). When the reviewing court finds the elements of the "credit-as-true" rule have been satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th

29 - OPINION AND ORDER

Cir. 2014).

As noted, the Court concludes the ALJ erred when he discredited the opinions of Drs. Koslofsky, Barry, and Karlsgodt as well as the lay testimony of Rasch, Huuki, and Wyss. The Court, however, declines to credit these opinions as true because it is unclear how the opinions would affect the ALJ's assessment of Plaintiff's RFC, and, therefore, outstanding issues remain that must be resolved before a determination of disability can be made. *See Strauss*, 635 F.3d at 1138. Moreover, in light of the ALJ's adverse credibility finding as to Plaintiff's testimony and the fact that many of Plaintiff's alleged impairments inherently lack objective medical evidence to support those impairments, the Court concludes the "record as a whole creates serious doubt that the claimant is, in fact, disabled." *See Garrison*, 759 F.3d at 1021.

Accordingly, on this record the Court remands this matter to the Commissioner for further proceedings consistent with this Opinion and Order.


### CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

30 – OPINION AND ORDER

42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 19th day of December, 2016.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

31 - OPINION AND ORDER